DECISION AND ORDER DENYING JAMES RADERS'S MOTION FOR RELIEF FROM AUTOMATIC STAY
G. Michael Halfenger, Chief United States Bankruptcy Judge *690 In May 2018 James Raders sued debtor Michael Frantz in the United States District Court for the Middle District of Florida (the "District Court"). Raders alleges that in March 2016 Frantz convinced him to invest more than $3 million with Frantz through two limited liability companies Frantz purportedly controls. The investment was a bust, says Raders; Frantz bamboozled him. Raders asks this court to modify the automatic stay on proceedings against the debtor imposed by 11 U.S.C. § 362(a) so that he can continue his litigation in the District Court.
I
Raders filed suit in the District Court against Frantz; Frantz Community Investors, L.L.C.; and Frantz Ventures, L.L.C. His amended complaint pleads claims for fraud, breach of contract, civil theft, conversion, and unjust enrichment. On these counts Raders seeks money damages of more than $3 million. A final count alleges that Frantz Ventures, L.L.C. is the alter ego of Michael Frantz and seeks a "judgment piercing the corporate veil of Frantz Ventures, L.L.C. and making Mike Frantz responsible for any and all liabilities of such entity." ECF No. 14-2, at 21. Raders also alleges that Frantz Community Investors, L.L.C., an Iowa limited liability company, was administratively dissolved for failing to file its annual report with the State. Id. at 3.
Frantz moved to dismiss the District Court case for lack of jurisdiction in July 2018. ECF No. 14-1, ¶3. The District Court denied the motion in September 2018, and Frantz and the corporate defendants thereafter filed a single answer denying all substantive allegations. ECF No. 14-3; Defendants' Answer and Defenses to Plaintiff's Amended Complaint, Raders v. Frantz , No. 18-cv-711 (M.D. Fla. Sept. 28, 2018), ECF No. 27.
The District Court docket shows no further proceedings until after Frantz filed a bankruptcy petition in this court on April 9, 2019. On April 16 Frantz filed a "suggestion of bankruptcy" in the District Court, giving notice of his April 9 bankruptcy filing. See Suggestion of Bankruptcy, Raders , No. 18-cv-711 (M.D. Fla. Apr. 16, 2019), ECF No. 28. Frantz subsequently included a $3.1 million disputed debt to Raders in his bankruptcy schedules and listed Raders as a creditor. ECF No. 11, at 22.
On April 17 the District Court ordered that the "action is STAYED as to Defendant Michael Frantz" but "remains pending as to Defendants Frantz Community Investors, LLC and Frantz Ventures, LLC." Order, Raders , No. 18-cv-711 (M.D. Fla. Apr. 17, 2019) (citing 11 U.S.C. § 362(a) ), ECF No. 29.
Raders then moved in this court for relief from the automatic stay to allow him to continue prosecuting the District Court case against Frantz. Raders also requests an order "confirming that the automatic stay does not prevent Dr. Raders and his attorneys from deposing the Debtor in connection with the Florida Federal Court Litigation in his capacity as a member or manager of the Non-Debtor Defendants". ECF No. 14, at 13.
This court held a hearing on Raders's motion on June 10, 2019. Raders's counsel agreed at the hearing that the facts necessary to decide the motion can be discerned from court filings in this bankruptcy case and in the Florida District Court case, of which this court may take judicial notice.
*691 See Fed. R. Evid. 201(b). Frantz's counsel contended that an evidentiary hearing was necessary but couldn't identify any relevant facts that he would prove at that hearing beyond those the court can judicially notice.
II
A
Section 362(a) of title 11 of the United States Code -the Bankruptcy Code's "automatic stay"-provides that the filing of a bankruptcy petition stays acts to collect pre-petition claims from the debtor or the property of the bankruptcy estate, including the continuation of legal proceedings against the debtor. Section 362(d)(1) provides that the bankruptcy court may grant relief from the stay "for cause".
Whether there is "cause" to grant relief from the automatic stay is a decision the Bankruptcy Code commits "to the discretion of the bankruptcy court." In re C & S Grain Co., Inc. , 47 F.3d 233, 238 (7th Cir. 1995). In deciding whether to exercise that discretion the court is informed in part by § 362(a)'s purpose: "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors". Fox Valley Const. Workers Fringe Ben. Funds v. Pride of the Fox Masonry and Expert Restorations , 140 F.3d 661, 666 (7th Cir. 1998) (quoting A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.) , 788 F.2d 994, 998 (4th Cir. 1986) ). As the Seventh Circuit explained in Matthews v. Rosene , "[s]ection 362 is designed to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions", but "[s]uspension of Section 362 ['s] automatic stay provisions may be consonant with the purposes of the Bankruptcy [Code] when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems[,]" such as commencing litigation that resulted in a judgment on which the creditor later sought collection. 739 F.2d 249, 251 (7th Cir. 1984) (emphasis added).
B
1
The litigation that Raders seeks to continue against the debtor lies in § 362(a)'s sweet spot-protecting debtors from having to litigate claims by a multitude of creditors in several different forums. Raders sued Frantz for $3 million in damages arising out an alleged investment deal in Florida. Exhibit F to Raders's complaint shows litigation against Frantz by other creditors apparently arising out of other transactions in other parts of the country. See ECF No. 14-2, 57-124 (purporting to show a pending action against Frantz in Cook County, Illinois; 3 pending actions and an outstanding judgment in Johnson County, Iowa; and an outstanding judgment in Linn County, Iowa); see also id. at 63-66 (alleging breach of contract by Frantz and seeking more than $4 million in damages in Cook County Circuit Court). Frantz's bankruptcy schedules list more than $38 million in non-priority unsecured claims and less than $4 million in assets. ECF No. 11, at 8 & 32. His statement of financial affairs states that within a year before filing for bankruptcy he was a defendant in three actions that were still pending when he filed his bankruptcy petition, including Raders's action in the District Court. Id. at 42.
Beyond all this, Raders has suggested that he intends to pursue litigation against Frantz in the bankruptcy court to *692 seek a declaration that Frantz's debt to him arises out of fraud and thus should be adjudged nondischargeable under 11 U.S.C. § 523(a)(2). Section 523(c) requires Raders to litigate his nondischargeability claim in the bankruptcy court. And if Raders intends to participate in the bankruptcy trustee's liquidation and distribution of Frantz's assets, Raders will have to file a claim in this court. Adjudication of any dispute over the validity of that claim is a part of the claims-allowance process-a core bankruptcy undertaking. What is more, the Federal Rules of Bankruptcy Procedure authorize the bankruptcy court to adjudicate claim allowance and claim nondischargeability in a single adversary proceeding. See Fed. R. Bankr. P. 3007(b) & 7001(6). Thus, only in this court can Raders fully adjudicate his claim against Frantz.
2
Raders argues that cause exists to grant relief from the stay because the District Court has been presiding over his claim for some time and completion of adjudication there would simplify the adjudication of claims here. Raders relies on IBM v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.) , which applies a three-factor test "for determining whether 'cause' exists" to modify the stay, asking whether:
a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
c) the creditor has a probability of prevailing on the merits.
938 F.2d 731, 735 (7th Cir. 1991) (alteration in original) (quoting In re Pro Football Weekly , 60 B.R. 824, 826 (N.D. Ill. 1986) ("An influential district court opinion ....")).
The circumstances at issue in IBM v. Fernstrom , though, are significantly different from those at issue here. IBM contracted with a warehouse subsidiary of Fernstrom to store computers. A fire at the warehouse destroyed IBM's property. IBM recovered from its insurer. Then IBM (really, IBM's insurer) sued Fernstrom (really, Fernstrom's insurer). Fernstrom and its subsidiary had already filed bankruptcy petitions. Six years of extensive litigation later, Fernstrom sought to dismiss IBM's case against it based on its long-pending bankruptcy case. IBM filed a motion for relief from the automatic stay in the bankruptcy case and stipulated that it would recover only on Fernstrom's insurance policies. The bankruptcy court granted relief from the automatic stay to allow IBM's insurer to continue its civil action. The debtor appealed, and the district court and Seventh Circuit both affirmed. The Seventh Circuit viewed the litigation as being, effectively, against a non-debtor (Fernstrom's insurer) to recover non-estate property (the proceeds of Fernstrom's insurance policies). See id. at 736 ("[D]ebtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors."). The court concluded that because IBM's non-bankruptcy litigation was at an advanced stage and would not have an economic effect on the reorganizing debtor, the circumstances supported the district court's decision affirming the bankruptcy court's decision to modify the stay to allow IBM's action to proceed.
Here, however, Raders seeks to continue his pursuit of a money judgment against the debtor, Michael Frantz. If *693 Raders were to succeed in that pursuit, he could only collect from Frantz's bankruptcy-estate property by participating in the claims-allowance process in this court or from non-estate property Frantz might acquire in the future, if Raders can prove to the bankruptcy court that the claim is not subject to discharge. In contrast to IBM's pursuit of a claim principally against Fernstrom's insurer, Raders seeks to pursue Frantz's assets in a non-bankruptcy forum-a course contrary to § 362(a)'s core purposes of "protect[ing] the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts" and "preclud[ing] one creditor from pursuing a remedy to the disadvantage of other creditors". Fox Valley Const. Workers Fringe Ben. Funds , 140 F.3d at 666 (quoting A.H. Robins Co., Inc. , 788 F.2d at 998 ). And, unlike the six-year-old litigation in Fernstrom , which had "spawned extensive discovery and numerous motions", 938 F.2d at 733, the litigation between Raders and Frantz in the District Court is only at the beginning stages of discovery. On top of all this, Raders intends to litigate in the bankruptcy court, as he must, to seek a declaration that Frantz's debt to him is nondischargeable because it is for money obtained by fraud, and it is far more efficient to litigate both the fraud claim itself and the issue of nondischargeability in this court than to have the parties litigate the fraud claim in the District Court and return here to litigate nondischargeability. See In re Chan , 355 B.R. 494, 507 n.11 (Bankr. E.D. Pa. 2006).
As a result, unlike in Fernstrom , the totality of the circumstances do not weigh in the creditor's favor here, and the debtor does not bear responsibility for the "problem" of having litigation pending in multiple places. While Raders understandably prefers to litigate close to home by his Florida lawyers, the need to litigate in the bankruptcy court is a cost imposed on all creditors and inherent in § 362(a). Raders invested with entities that he knew were not located in Florida; the potential need to participate in bankruptcy proceedings elsewhere was a risk inherent in that undertaking. More important, Raders's suit against the debtor is the very type of litigation that the § 362(a) stay is designed to stop. Raders has not shown that cause exists to modify that stay to allow him to continue his District Court litigation against Frantz.
III
A
Raders alternatively asks this court for "an order confirming that Dr. Raders and his attorneys may depose the Debtor as a member of [Frantz Community Investors, L.L.C. and Frantz Ventures, L.L.C.] in connection with the Florida Federal Court Litigation". ECF No. 14, at 10. He seeks this relief because, although the District Court has allowed the litigation in Florida to proceed against these companies, Frantz contends that efforts to compel him to testify offend the automatic stay.
Raders's request that the court "confirm that the automatic stay does not prevent [him] ... from deposing the Debtor in connection with the Florida Federal Court litigation as to the limited liability company Non-Debtor Defendants therein", id. at 11, is too amorphous to adjudicate. Raders does not present a notice of deposition or other discovery to which Frantz has objected and over which the parties are at loggerheads regarding application of the stay. He simply poses in the abstract the question of whether he can seek discovery against Frantz as a member of the company defendants.
*694 B
1
The § 362(a) stay generally does not bar actions against non-debtors. See Fernstrom , 938 F.2d at 736 ; see also Fox Valley Const. Workers Fringe Ben. Funds , 140 F.3d at 666 ("The stay ... protects only the debtor ...."). So, the stay in Frantz's case does not necessarily bar Raders from giving notice of depositions under Federal Rule of Civil Procedure 30(b)(6) naming the Frantz companies as deponents. Rule 30(b)(6), though, requires the deponent (i.e., the company) to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf", and discovery directed at Frantz-an individual party to the litigation, as well as a potential designee of the Frantz companies under Rule 30(b)(6) -could violate § 362(a)(1)'s prohibition on the continuation of proceedings against a debtor and, perhaps, the District Court's order allowing the litigation to proceed only against the company defendants.
2
Given the claims in the District Court litigation, forcing Frantz to testify in any capacity may be problematic. Fernstrom and other cases recognize an exception to the general rule that § 362(a) does not stay litigation against non-debtors "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.' " Fernstrom , 938 F.2d at 736 (quoting A.H. Robins Co., Inc. , 788 F.2d at 999 )). As noted in Fox Valley Construction Workers Fringe Benefit Funds , "[t]he stay ... protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy." 140 F.3d at 666.
Raders's amended complaint attributes all of the conduct of which he complains to Frantz. He alleges that the company defendants acted through Frantz; that Frantz Community Investments, L.L.C. is administratively dissolved; and that Frantz Ventures, L.L.C. is Frantz's alter ego, "a mere device and sham to accomplish Frantz's Ponzi scheme type fraud activities." ECF No. 14-2, at 20; see also id. at 3 & 11-19. As a result, litigation against the Frantz companies may be covered by the § 362(a) stay because the debtor and the companies "have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy." Fox Valley Const. Workers Fringe Ben. Funds , 140 F.3d at 666.
Any act in continuing the litigation against the non-debtor companies may, therefore, be an "act to collect, assess, or recover a claim against the debtor" or to "exercise control over property of the estate". § 362(a)(3) & (6) ; see, e.g., Klarchek Family Trust v. Costello (In re Klarchek) , 508 B.R. 386, 397 (Bankr. N.D. Ill. 2014) ("[G]iven the potential adverse impact on property of the estate of the action, the action [against a non-debtor] must be stayed pursuant to section 362(a)(3)."). Indeed, as Chief Justice Roberts explained in Wellness International Network, Ltd. v. Sharif , a creditor's allegation that a nominally distinct legal entity is the alter ego of the debtor "fits comfortably" into the matters Congress has assigned to bankruptcy adjudicators for more than a century. See --- U.S. ----, 135 S. Ct. 1932, 1952-53, 191 L.Ed.2d 911 (2015) (Roberts, C.J., dissenting). If Frantz Ventures, L.L.C. is truly the alter ego of Frantz, as Raders *695 alleges, then Frantz Ventures, L.L.C.'s property may be property of Frantz's bankruptcy estate, and whether property is property of a bankruptcy estate is a question Congress has long reserved to the bankruptcy court. See 11 U.S.C. § 542 ; Wellness , 135 S. Ct. at 1953 (Roberts, C.J., dissenting) ("[T]he Bankruptcy Court here had authority to decide whether the assets allegedly concealed in the trust belonged to Sharif's estate."); see also Sampsell v. Imperial Paper & Color Corp. , 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941) (holding that "the jurisdiction of the bankruptcy court was properly exercised by summary proceedings" in which a bankruptcy referee "found ... that [a] corporation was 'nothing but a sham and a cloak' devised by [the debtor] 'for the purpose of preserving and conserving his assets' for the benefit of himself and his family[ ] and that the corporation was formed for the purpose of hindering, delaying and defrauding his creditors" and "ordered that the property of the corporation was property of the bankrupt estate and that it be administered for the benefit of the creditors of the estate).
3
The application of the automatic stay to non-debtors is heavily context dependent, so whether (and to what extent) § 362(a) prevents Raders from continuing the Florida litigation against Frantz Community Investors, L.L.C. and Frantz Ventures, L.L.C. is a question best left for the District Court to consider in the first instance. See In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig. , 140 B.R. 969, 974 (N.D. Ill. 1992) (explaining that the district court had "authority to decide" whether a party to "multidistrict patent litigation" was "entitled to take discovery from former ... employees" of another, even though the latter was a debtor in a pending bankruptcy case, where the discovery was potentially relevant to continuing litigation against another non-debtor party). "Bankruptcy judges possess authority, by a combination of 11 U.S.C. § 105(a) and 28 U.S.C. § 157(b)(2), to issue injunctions in core proceedings." Id. But the trustee in this bankruptcy case has neither commenced a proceeding for turnover of the assets of the Frantz companies nor asserted a claim that either of those companies is an alter ego of the debtor. More to the point: no one has asked this court to enjoin Raders from proceeding against the Frantz companies.
IV
For these reasons, Raders's motion for relief from the automatic stay is denied in its entirety.
So ordered.